UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHEN PERKINS,

               Plaintiff,

   v.

NANCY A. BERRYHILL,

               Defendant.

CASE NO. 3:17-cv-5182 BAT

**ORDER REVERSING AND REMANDING**

Plaintiff Stephen Perkins seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Mr. Perkins initially argued the Administrative Law Judge ("ALJ") erred by failing to properly address: (1) medical opinions of his chiropractor and physical therapist; (2) medical evidence from his treating surgeons; and (2) his credibility. Dkt. 12. The Commissioner agrees the ALJ committed harmful error when he failed to properly address the opinions of the chiropractor and physical therapist and seeks remand for further administrative proceedings as to that issue only. Dkt. 15. In response, Mr. Perkins argues that two issues remain: (1) whether the ALJ erred in discounting his credibility, and (2) whether an award of benefits is proper.[1] Dkt. 16 at 1; 5-9.

---

[1] Therefore, the Court does not further address Mr. Perkins' claim that the ALJ failed to properly address the medical evidence of his treating physicians.

ORDER REVERSING AND REMANDING - 1

The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Stephen Perkins filed an application for Title II disability benefits on April 15, 2013. Tr. 131-132. The alleged onset date of disability was January 23, 2005. Tr. 131. The date last insured ("DLI") on his earnings record was December 31, 2009. Tr. 136. The application was denied and he requested a hearing before an ALJ. Tr. 8. After a hearing on May 18, 2015, an unfavorable decision was entered August 28, 2015. Tr. 16. On January 13, 2017, the Appeals Council denied Mr. Perkins's request for review.

Utilizing the five-step disability evaluation process (20 C.F.R. §§ 404.1520, 416.920), the ALJ found Mr. Perkins did not engage in substantial gainful activity from January 23, 2005, through December 31, 2009, and that prior to his DLI, Mr. Perkins had severe impairments, including: degenerative disc disease, with radiculopathy, status post decompression surgeries. Tr. 18. Mr. Perkins previously worked as a timber faller. Tr. 58. He was 42 years old in December 2009. No medical expert testified during the May 2015 hearing. Tr. 34. On June 14, 2014, the Washington State Industrial Insurance agency determined Mr. Perkins was permanently totally disabled. Tr. 671.

The ALJ found that Mr. Perkins could not perform his past work but could do other work, based on the following assessment of residual functional capacity to perform:

> Sedentary work as defined in 20 CFR 404.1567(a) except the claimant could occasionally climb, stoop, and crawl. He could frequently kneel and crouch. He should have not worked around wetness or vibration. During an eight hour day he could sit four hours and stand and walk four hours. He needed a sit-stand option, where he could sit for 25 minutes at a time, and then stand or walk for 25 minutes at a time.

Tr. 19. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that jobs existed in the national economy for a person of Mr. Perkins' age, education, work experience and residual functional capacity such as assembly (D.O.T. 726.685-066) (1,000 regional jobs and 100,000 national jobs); material handler (D.O.T. 726.687-030) (800 regional jobs and 80,000 national jobs); cashier (D.O.T. 211.462.010) (1,000 regional jobs and 100,000 national jobs) (although classified by the D.O.T. as "light," the VE testified the occupation can be performed at the sedentary level). Tr. 25.

## DISCUSSION

### A. Agreement of Error – Opinions of Dr. Fleet and Chiropractor Boney

The Commissioner concedes the ALJ erred when he failed to consider an April 2015 opinion from Mr. Perkins' chiropractor, Clinton W. Van Fleet, D.C. (Tr. 856–59). Dkt. 15 at 2. The ALJ discounted the opinion because it postdated the DLI by several years and it conflicted with medical opinions and objective medical evidence. Tr. 24. However, because the opinion expressly noted limitations applying back to 2015 (Tr. 859) and contained a detailed assessment of Mr. Perkins's functioning (Tr. 856–59), the ALJ should have addressed the opinion.

The Commissioner also concedes the ALJ did not properly address the opinions of Bob Boney, a physical therapist who evaluated Mr. Perkins in March 2006 (Tr. 520-27) and in May 2009 (Tr. 602-09). Although the March 2006 evaluation stated Mr. Perkins could perform medium work (Tr. 526) (described as less restrictive than the residual functional capacity), the ALJ failed to address the specific functional limitations found by Mr. Boney. For example, Mr. Boney determined that although Mr. Perkins could work an eight-hour day, he can only sit for a maximum of two hours, stand for a maximum of three hours, and walk for a maximum of three hours. Tr. 524. In contrast, the ALJ found Mr. Perkins is capable of sitting for four hours and

standing or walking for four hours. Tr. 19. The ALJ also did not address Mr. Boney's May 2009 evaluation, which referred to even greater restrictions. Tr. 605–09.

The parties do not disagree that the ALJ committed harmful error, but disagree on the remedy. The Commissioner argues that the case should be remanded for further administrative proceedings and Mr. Perkins argues that the case is appropriate for immediate payment of benefits. For the reasons discussed more fully below, the Court concludes that this case should be remanded for further administrative proceedings.

**B.     The ALJ Erred in Assessing Claimant's Subjective Pain Testimony**

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.2009). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of the symptoms. *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). An ALJ does this by making specific findings supported by substantial evidence – the "ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

The ALJ found Mr. Perkins' medically determinable impairment could reasonably be expected to cause symptoms such as those described by Mr. Perkins (*i.e*., unpredictable episodes of pain; inability to take three steps without pain, while at other times being able to walk one-half of a city block; not being able to stand longer than 15 minutes without laying down to alleviate pain; difficulty lifting a gallon of milk and performing household chores such as sweeping, vacuuming, and laundry) (*see e.g.,* Tr. 42-44). In fact, when the residual functional capacity included the need to rest occasionally during the work day, all competitive employment was eliminated. Tr. 61-61. Thus, the first prong of the test is satisfied.

As to the second prong, the ALJ concluded that Mr. Perkins' description of pain symptoms were not consistent with the record:

> When viewed longitudinally, the imaging studies and history of lumbar surgeries discussed above support a limitation to the sedentary exertion range. However, the claimant's objective performance during his multiple examinations by Drs. Delashaw and Musleh, which consistently describe him as exhibiting full strength and normal gait are inconsistent with his allegations of pain symptoms so severe as to preclude him from fulltime work activity. Nevertheless, in consideration of his testimony regarding his alleged symptoms, the residual functional capacity includes postural and environmental limitations, and a sit-stand option.

Tr. 22. The Commissioner argues that, in addition to the strength and gait findings noted above, the ALJ also relied on Mr. Perkins' failure to cooperate with an October 2006 rehabilitation plan as a basis to discount his subjective reports of pain. This latter reason is discussed first.

### 1. The ALJ Erred in Discounting Mr. Perkins' Credibility Based on October 2006 Proposed Vocational Rehabilitation Plan

The Commissioner argues Mr. Perkins' failure to cooperate with attempts in October 2006 to get him back into the workplace as a customer service clerk "undercut his claims that he

was disabled from performing any work existing in significant numbers in the national economy." Dkt. 15 at 7. At that time, Mr. Perkins was described as having done very well on his vocational testing and could consider attending a community college program but was more focused on "getting fixed" so that he could find a job that he wanted. Tr. 236 (Rainier Case Management, Inc. Proposed Vocational Rehabilitation Plan dated October 31, 2006). The proposed rehabilitation plan relied on the May 2006 physical capacity examination ("PCE"), which showed Mr. Perkins could sit for .5, stand for .75, walk for .75 with lift to 40 pounds and no crawling or bending or stooping. Tr. 236. Although Mr. Perkins believed he was getting worse physically and needed to be seen by a neurosurgeon, the vocational counselor concluded the earlier PCE could be relied on with regard to "this vocational goal" because there was no contradicting referral or medical information at that time. Tr. 236.

Mr. Perkins contends that relying on his level of participation in the proposed rehabilitation plan is not a clear and convincing reason for discounting the severity of his symptoms because, the training took place more than three years prior to the DLI and two years prior to his second surgery, the ALJ largely ignored his full participation in testing and physical therapy, and he was optimistic about vocational rehabilitation after his second surgery. Dkt. 16 at 3 *citing* Tr. 637-638 ("10-15-08 still in physical therapy . . . when stabilized that he will go back to school"; 12-23-08 getting ". . . some benefit from going to physical therapy . . . start in to vocational rehab in the spring. He is getting optimistic.") Mr. Perkins also notes that the PCE performed in 2009 showed that his condition was worse in 2009 than in 2006. Dkt. 12 at 13.

Approximately one week after the October 2006 vocational rehabilitation plan was submitted, Dr. Van Fleet informed Rainier Case Management that Mr. Perkins' vocational services needed to be postponed at that time because Mr. Perkins was likely to have surgery to

his lumbar spine. Tr. 562 (November 7, 2006 Letter). In addition, and although the ALJ mentions the 2006 rehabilitation plan in his decision (Tr. 20), he does not specifically cite to this plan as a reason for discounting Mr. Perkins' credibility nor does he identify what part of Mr. Perkins' testimony is undermined by a failure to participate in the 2006 proposed plan. *See* Tr. 21. Thus, reliance on the plan as a reason to discount Mr. Perkins' credibility (if this is in fact, what the ALJ did), was harmful error as the Court is unable to conduct any meaningful review of the ALJ's reasoning of how this adversely impacts Mr. Perkins' description of pain symptoms.

### 2. The ALJ Erred in Concluding Complaints of Pain Were Inconsistent with Physicians' Evaluations

Mr. Perkins testified that while his first two surgeries helped his pain some, he was left with a "great deal of pain in [his] back, hips, and shooting pain" in his legs; at times he was limited to three steps before "shooting, shrieking pain" went through his back and legs; at times he could walk one-half of a city block or go up one flight of stairs, but he could never do a lot or go far. TR. 42-43. There was never any prolonged period of time during 2005 to 2010 that he was able to walk more than half a block or stand more than three to fifteen minutes at a time, without having to lie down or recline in a chair to take the downward pressure off his back. He also had difficulties lifting a gallon of milk or putting things to or from a grocery cart. Tr. 44. He was on prescription pain medications through approximately May of 2011 (Oycodone, Percocet, or Hydrocodone) and at the time of his hearing, was taking daily doses of 16 to 20, 200 milligram tablets of Ibuprofen. Tr. 45-46. In 2007, Mr. Perkins hired a carpenter to build up his kitchen cabinets and raise his refrigerator so he does not have to reach down for things. Tr. 48, 55. Between 2005 and 2009, Mr. Perkins' typical day consisted of "just getting through the day," having to lay down several times during the day to take the weight off his back, and preparing meals and taking care of himself "was pretty much an all-day affair." Tr. 50.

Household chores such as laundry, sweeping, cleaning, mopping, and cleaning dishes were very difficult and some, such as sweeping, can bring on instant pain. *Id.* Mr. Perkins also testified that the amount of pain that shoots through his legs from "generally being in an upright position . . . even sitting down without supporting myself with my upper body" would have precluded him from (and as of the date of the hearing, would still preclude him from) performing even a sedentary job as he would have to lay down on the floor to take the pressure off his spine. Tr. 52-53.

The ALJ concluded Mr. Perkins' allegations of pain symptoms so severe as to preclude him from fulltime work activity were inconsistent with his "objective performance during his multiple examinations by Drs. Delashaw and Musleh, which consistently describe him as exhibiting full strength and normal gait." Tr. 22. The Commissioner argues that support for the ALJ's conclusion can be found earlier in the ALJ's decision, where he summarizes the findings of Dr. Delashaw and Dr. Musleh. The problem with this argument is that the ALJ did not discuss these findings or any specific medical evidence when rejecting Mr. Perkins' subjective complaints of pain. Instead, he relied on his own opinion that findings of full strength and normal gait are inconsistent with Mr. Perkins' complaints of pain and reported daily limitations. There are no findings by Dr. Delashaw, Dr. Musleh, or any other medical provider that Mr. Perkins' complaints of pain before or after his multiple surgeries were inconsistent with determinations as to strength and gait. Instead, the doctors duly recorded the degree and impact of pain as consistently reported by Mr. Perkins ("tremendous pain" 11-15-06 (Tr. 481-482), "significant pain" 1-16-08 (Tr. 465), "back pain and left leg pain" 9-9-09 (Tr. 476); recurrent symptoms of lower back pain, leg pain, and constant left hip pain affecting ability to engage in any kind of activity 12-11-09 (Tr. 484). At the time of the DLI, those symptoms had already

required two surgeries. In addition, based on diagnostic tests and their examination findings, both surgeons recommended a third surgery in 2009. *See, e.g.,* Tr. 476-477 (review of recent MRI showing "a severely degenerative disk at L5-S1" and recommending fusion); Tr. 483 (plans for diagnostic nerve block prior to surgery).

To support a lack of credibility finding, the ALJ was required to "point to specific facts in the record which demonstrate that [Mr. Perkins] is in less pain than []he claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). Here, the ALJ found generally that Mr. Perkins' testimony that his pain prevented him from working was not credible, but failed to identify which testimony he found not credible and why. Therefore, the ALJ committed legal error. This error was not harmless because it precludes the Court from conducting a meaningful review of the ALJ's reasoning.

### C. Scope of Remand

Mr. Perkins argues that in light of the ALJ's error, the Court must credit his testimony as true and remand to the agency for an immediate award of benefits. A remand for an immediate award of benefits is appropriate, however, only in rare circumstances. *Treichler v. Colvin*, 775 F.3d 1090, 1099 (9th Cir. 2014). Before ordering that extreme remedy, three requirements must have been met. First, the Court must conclude that "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.2014).

Second, the Court must conclude that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id*. This requirement will not be satisfied if "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record," because "[t]hese

are exactly the sort of issues that should be remanded to the agency for further proceedings." *Treichler*, 775 F.3d at 1105. Importantly, we are "to assess whether there are outstanding issues requiring resolution before considering whether to hold that the claimant's testimony is credible as a matter of law." *Id*. This is because "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Id*. at 1106. The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "'disability benefits ... available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id*., *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

Third, the Court must conclude that "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1021. Finally, even if all three requirements are met, the Court retains "flexibility" in determining the appropriate remedy. *Id*.

Here, although the Court concludes the ALJ committed legal error by failing to specify which testimony he found not credible and why, the Court declines to remand for an immediate award of benefits because it is not satisfied that "further administrative proceedings would serve no useful purpose." The record raises crucial questions about the extent to which Mr. Perkins' pain and other symptoms render him disabled. Mr. Perkins testified that his pain is only alleviated by lying down several times during the day. When asked hypothetically if a person needed to lay down as described, the vocational expert testified that he would be unemployable. In addition, the parties agree that the ALJ failed to properly address evidence which offered a more detailed assessment of Mr. Perkins' functioning and referred to restrictions greater than

those of the residual functional capacity. There is also Mr. Perkins' physical therapist's recommendation of a range of medium work *albeit* with significant limitations. It is up to the ALJ to address these conflicts, reconcile this evidence with Mr. Perkins' treatment and surgical records, and ultimately, determine whether Mr. Perkins can actually work a full 8-hour day and if so, what type of job he can perform and whether such jobs exist in significant numbers in the national economy.

Because critical factual issues remain unresolved, not the least of which is how on-going complaints of pain and the need for further surgery may be inconsistent with findings relating to muscle strength and gait, the Court concludes that the case should be remanded to the ALJ for further proceedings rather than for an immediate award of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall assess the opinions of Mr. Perkins' chiropractor and physical therapist, develop the medical record as needed, clarify the ALJ's findings as to the intensity, persistence, and limiting effects of Mr. Perkins' stated symptoms, assess Mr. Perkins' residual functional capacity, and proceed to steps four and five.

DATED this 2nd day of October, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge